Alexander Del G-iorno, J.
This is a claim to recover damages for personal injuries sustained by claimant in the City of Albany, as a result of the alleged negligence of the State of New York.
The scene of the accident was the intersection of Clinton and Catherine Streets. Catherine Street runs in a general easterly and westerly direction, and Clinton Street, at the point where it is intersected by Catherine Street, runs generally north and south and is level. Running westerly from Clinton Street, Catherine Street is an uphill grade. At the southwesterly corner of the intersection of these two streets, and higher in elevation *480 than the streets, is located the Schuyler Mansion, an historical site owned by the State. Adjacent to both streets are concrete sidewalks, each of which is bordered by a stone retaining wall. In the surface of the sidewalk on Catherine Street, and adjacent to the retaining wall, is constructed a concrete gutter. In the retaining wall adjacent to the sidewalk, and.leading to the gutter, are pipes draining water from the land adjacent to the Schuyler Mansion. The water is conducted to a point near the place of the accident, where there is a sewer.
Claimant testified that on February 26,1958, at about 7:40 a.m., he left his home at 3 Park Avenue, Albany, to go to his place of employment. Although he usually drove to work, he could not take his car out of its parking space because of snow conditions. He was wearing rubbers. The weather was clear, cool and dry. After proceeding on foot for some distance, he arrived at Clinton Street and walked southerly on the westerly sidewalk thereof. Walking over the intersection of Clinton and Catherine Streets, he reached a point at the sidewalk intersection in front of the Schuyler Mansion. He noticed that snow in the street was even with the curb. The snow on Catherine Street was high and was icy, a condition which he believed to have been caused by the thawing and icing of hummocks which had previously formed. Clinton Street was icy, with snow piled up by the city between the curb and an area comprising two thirds of the sidewalk. Starting to mount the curb, he put one foot upon the sidewalk (State’s Exhibit A, marked Claimant’s Exhibit 16), slipped and landed about four feet ahead, injuring his right leg. He said his fall was caused by his stepping upon ice. He was removed to the hospital, where he remained for some time, and was confined in bed at home until June, later being obliged to use crutches for a period of four additional weeks. He returned to work on August 18,1958. During the first week of September, 1958, while he was playing ball at a picnic, his foot buckled and caved in with the result that his leg again was placed in a cast for a period of two to three weeks. On this second occasion, he was unable to work for six weeks. On cross-examination, he admitted that on the examination before trial he had stated that on the morning of the accident, the city streets were all fairly icy; at the trial, he stated that he did not observe any ice immediately prior to his falling; on the examination before trial, he testified that he did not pay particular attention to the condition, although his eyes were open. At the trial, he said that on point marked “ X” on State’s Exhibit A- there was rough ice, and that on the sidewalk flags marked 1, 2, 3, 4 and 5 the cement could not be seen.
*481 Forrest M. Brownell, testifying on behalf of claimant, stated that he is employed by the same company that employs claimant, and that he and claimant are friendly, but not close. On the morning in question, he had left home at 7:45 a.m., and was proceeding on the westerly side of Clinton Street in a southerly direction. About 50 feet to 70 feet ahead of him, Fiato was walking. After Fiato had crossed the intersection with Catherine Street, the witness saw claimant upon the ground at the intersection, a few feet off the curb. At about 8:20 a.m., an ambulance removed Fiato. The witness stated that the sidewalk on Catherine Street was covered with impacted snow more than 1 inch high, from a heavy snowfall of more than a week. On Clinton Street, looking south, he saw a path, one third of the concrete adjacent to the retaining wall being clear, and the remaining two thirds containing snow. He stated that at the point where claimant fell there was snow, but could not say if it had been tracked from the street proper, where there was snow almost up to the curb. There was a gutter built on the Catherine Street sidewalk to provide drainage from the stone wall outside Schuyler Mansion. For one week prior to the accident there was snow on the Catherine Street sidewalk west of the drain; the portion of the sidewalk east of the drain was icy, which tended to indicate that the water emanating from the wall was by-passing the drain and running to the sidewalk. The witness had seen that condition at that corner in the Winter months, although he had never seen anybody else fall.
On cross-examination, he testified that as he was rounding the corner of Morton Avenue running toward Clinton Street, he saw claimant from 60 feet to 80 feet away. He tried to overtake claimant, but the latter fell before he could reach him. After claimant fell, his head was pointing up Catherine Street. There was no clear line of demarcation between the curb and the street because of the presence of snow and ice. The spot where claimant first stepped upon the sidewalk was marked by the witness on Claimant’s Exhibit 16 by an “ X ”. He testified that there was a heavy snowfall on February 16, and, while he could not recall if there had been any other snowfall between then and the date of the accident, he was certain that no snow was removed from Catherine Street and that between February 16 • and February 26, did not observe any one shoveling or plowing snow. On redirect, he stated that on the day of the accident, the snow was impacted, and there was an area of clear, smooth ice.
Claimant was sent to Albany Hospital, where he remained until March 1, 1958. His physician, Dr. John W. Ghormley, testified that an X ray of the right leg showed an oblique slightly *482 comminuted fracture through the distal third of the tibia; there was also an oblique fracture through the proximal third of the fibula. A long leg cast was applied. This was removed on April 23, 1958 and replaced after X ray with another short cast to the knee, and claimant was given crutches to use. On June 4, 1958, the cast was removed, claimant continuing to use crutches until July 2, 1958. He went back to work until September 15, at which time the witness had to recast claimant’s foot and leg until October 10, another injury to the leg having been suffered by claimant as the result of a fall. Claimant then returned to work on October 10,1958.
At the close of claimant’s case, the State moved to dismiss the claim upon the grounds that claimant had not established that the State was negligent, either by an act of commission or omission, that claimant was guilty of contributory negligence in that he saw the existing condition and was aware of it and that claimant failed to establish notice to the State of the condition. Decision thereon was reserved.
On behalf of the State, Clarence E. Gregg testified that he had been engaged by the State Education Department for 14 years as the curator of Schuyler Mansion. His duties were the management of the mansion, the care of the grounds and the supervision of the help and of visitors. He resides in a house on the grounds. On the day of the accident, he rose at 7:00 a.m., breakfasted and went to the street, where he unlocked the ground gate between 8:00 a.m. and 8:30 a.m. He walked down the length of both sidewalks. He stated the sidewalk was clear to the south past the steps of the mansion. There was a thin sheeting of ice at the curb, and from the street to the curb there was snow. The day before, he had inspected the vicinity, finding no ice there. Informed by a policeman of the accident, he put rock salt on the ice spot. He recalled the snowfall of February 16, 1958. On that day he employed some boys to shovel the snow from the sidewalk. It was his practice to call upon the key boy in the mansion, who in turn procures some outside boys. When the boys arrive, the witness gives them the necessary implements. He pays the boys out of his pocket, and the item is then placed on his wife’s pay sheet. On February 17, 1958, there having been no school because of the snowfall, the boys came and shoveled the snow, starting at the corner and proceeding downward. (State’s Exhibits, C, D, E. These pictures had been taken by the witness to use up some of his film. They showed the boys working on Catherine Street, after they had ’ finished shoveling on Clinton Street.) In the early evening of February 25,1958, the witness crossed the corner, observing that - *483 the sidewalk was clear and free of snow and ice, although on the street there was hard-packed snow up to the curb. He stated that there had never been an accident outside the mansion caused by snow or ice.
On cross-examination, the witness testified that there had been no ice on the night before the accident, but that during that night there was a thaw, and that any ice there on February 26 was caused by the melting snow on the Catherine Street sidewalk, one third of which was covered with snow at the curb side. He insisted that on February 26, Clinton Street was free of snow to the curb. He stated that for snow removal, he was furnished with the necessary implements, but not help, and was permitted to hire boys to shovel the snow. He explained that the purpose of the drains in the wall on Catherine Street is to prevent water from becoming contained in the wall. The water drips into the catch basin. Sometimes when a heavy rain occurs, or there is a thaw, the water may overflow onto the sidewalk. He stated that he saw no water on February 26.
Martin Miller, aged 18 years, testified that he then lived at 24 Catherine Street, two houses west of the mansion, and that when he had attended school he had helped Mr. Gregg by shoveling snow. About 8:15 a.m., on the day of the accident, he saw claimant on the ground; that there was a prowl car at the scene; that claimant’s left leg was in the street, off the curb, his head facing-westerly. He stated that there was no ice on panéls 1, 2, 3, 4 and part of 5 on State’s Exhibit A; he marked where there was ice on State’s Exhibit A and in red pencil where claimant lay upon the ground. The snow at the curbs had been piled up by the City of Albany’s plows. The ice was smooth and there was no compressed snow on the sidewalk. When he shoveled the snow on February 17 with others, the whole sidewalk was cleared. On cross-examination, he stated that the ice which was near claimant flowed from the snow piled on the sidewalk and curb on Catherine Street. On February 17, the snow was piled up along the curb to a height of three feet to three and one-half feet, but by the date of the accident the witness had broken it up on two occasions so that it was then lower. He testified that he had seen water emerging from the wall only in Summer after a heavy rain, and never in Winter.
Walter J. Frisbee, aged 19 years, residing at 30 Catherine Street, testified that when he was in school he used to do work for Mr. Gregg, on the mansion grounds and outside the grounds by way of snow removal in Winter, having been paid in cash on an hourly basis. On February 17, 1958, he shoveled the snowT on Catherine Street outward to the street. The snow from the *484 street had been piled on one third of the sidewalk near the curb. On cross-examination, he stated that the snow at the curb was three and one-half feet high. He did not recall whether any water was seeping from the wall of the mansion.
The weather reports which were introduced in evidence indicate that on February 15,1958, there was a snowfall of 0.6 inches in the Albany area and on February 16 of 17.3 inches, a total of 17.9 inches. Further, between that date and February 20 the highest temperature never rose above 21 degrees; on February 21, the highest temperature was 35 degrees, low 11 degrees; February 22, high 38 degrees, low 22 degrees; February 23, high 36 degrees, low 19 degrees; February 24, high 45 degrees, low 36 degrees; February 25, high 40 degrees, low 31 degrees.
There was also introduced into evidence an extract of section 28 of chapter 15 in the Codification of the Charter, Statutes and G-eneral Ordinances of the City of Albany (1942), such chapter 15 being entitled “ Streets ”, referring to snow removal by an owner of a public building.
At the close of the entire ease, the State renewed the motions to dismiss previously made, on which decision was reserved.
It is the contention of claimant that snow piled on the southerly curbline of Catherine Street and westerly of Clinton Street would, in thawing, because of the terrain, cause water to run down, over and upon the sidewalk at the intersection; that such water would turn into ice at night; that the subterranean drainage from the abutting State lands was channeled through the retaining wall and into the ditch upon Catherine Street and that the sidewalk drain was inadequate.
Standing in the position of a private landowner the State can be held responsible for its affirmative acts of negligence or for any improper construction of its premises or negligent operation or maintenance of the premises.
Claimant contends that the State was negligent upon the theory that (1) it piled large amounts of snow upon the curbline in such a position that when thawing occurred, water would run down upon the public sidewalk, or (2) that the State discharged water from the ground surrounding the Schuyler Mansion in such quantities that the drainage facilities provided were insufficient to prevent excess water from flowing over and upon the public sidewalk.
Claimant maintains the snow on Catherine Street was high and icy, and that there was a snow pile on Clinton Street between the curb and an area comprising two thirds of the sidewalk, and was icy; claimant’s witness, Brownell, stated that the sidewalk on Catherine Street was covered with impacted snow more than *485 1 inch high, and that on Clinton Street there was a path, one third of the sidewalk being clean and the remaining two thirds containing snow. On the other hand, State’s witness Gregg insisted that the boys he hired had cleared the sidewalk of Clinton Street of snow and ice, although on the street there was hard-packéd snow up to the curb but that the sidewalk of Catherine Street had snow covering to the extent of one third of the sidewalk. State’s witness, Miller, one of the boys, stated that when he shoveled snow on February 17, the whole sidewalk of Clinton Street had been cleared. Stating that there was no ice on panels 1, 2, 3, 4 and part of 5 (State’s Exhibit A), he marked where there was ice and where claimant lay upon the ground, the ice being smooth. He said the ice near claimant flowed from snow piled on the sidewalk and curb of Catherine Street by the City of Albany plows. State’s witness Frisbee testified that the snow on Catherine Street had been piled from the street onto one third of the sidewalk near the curb.
With respect to the presence of any snow upon the curbline, the court finds that the State, as owner of the Schuyler Mansion, was under no duty to persons using the sidewalk in front of its premises of removing ice and snow normally accumulating through the action of the elements. This rule applies even though an owner is required by statute, ordinance or police regulations to remove all snow and ice from the sidewalk. Where an owner attempts to remove the snow or ice, he must do so in a reasonably careful and prudent manner and avoid setting any pitfalls. Where it is not shown that the shoveling of the snow actually made the sidewalk more slippery or hazardous than it had been, liability does not result. (Herrick v. Grand Union Co., 1 A D 2d 911.) A failure to get all the snow and ice off the sidewalk is not negligence. (Spicehandler v. City of New York, 303 N. Y. 946; Hendley v. Daw Drug Co., 293 N. Y. 790; Kelly v. Rose, 291 N. Y. 611.) Further, it must appear that the owner created a dangerous condition of ice and snow on the sidewalk. (Olm v. State of New York, 207 Misc. 610.) Accordingly, the court finds that the State was not negligent in the manner of the removal of the snow from the sidewalks. It must be considered here that the City of Albany had plowed the snow high upon and against the sidewalk. This condition was not the creation of the State, and whatever resulted therefrom may not be imputed to the State.
As to the question of alleged improper drainage, the court finds that the weight of evidence indicates that the thin sheeting of ice at the curb area was the result, not of any drainage insufficiency, but rather of the thawing during the night previous to *486 the occurrence of the accident of snow at the curb. There is no evidence that there had been any drainage from the wall or that the sidewalk drain was improperly constructed or inadequate. The court finds that adequate provision was made by the State for drainage of water emanating from the mansion grounds, and that no dangerous or defective condition existed.
There is involved also herein a question of contributory negligence. Claimant by his testimony indicated that a generally icy condition prevailed on the sidewalks and streets of Albany on the date of the accident. His only testimony as to the happening of the accident was that he put one foot on the sidewalk, slipped and fell; he noticed the snow in the street was even with the curb; that the snow on Catherine Street was high and icy; that on Clinton Street it was icy with snow piled up between the curb and two thirds of the sidewalk. A person walking on a sidewalk or other place known to be slippery because of ice and snow is required to use car.e commensurate with the danger to prevent injury to himself. He must show that he used due care and that he walked slowly and carefully (O’Hara v. City of Brooklyn, 57 App. Div. 176), and this would be true even where, as here, the person walking was wearing rubbers (Stone v. City of Poughkeepsie, 15 App. Div. 582). Upon this record, the court is constrained to hold that claimant did not exercise care commensurate with the danger, and that he was guilty of contributory negligence.
Accordingly, the court finds that the claimant has failed to establish any negligence on the part of the State which was the proximate cause of the accident and has failed to establish also his freedom from contributory negligence.
This claim is dismissed. This constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act.